# IN THE COURT OF APPEALS OF IOWA

No. 19-1450
Filed November 6, 2019

IN THE INTEREST OF S.M.,
Minor Child,

S.L.M., Father,
          Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko,
Associate Juvenile Judge.

A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant
Attorney General, for appellee State.

Michelle Hynes of Juvenile Law Center, Sioux City, attorney and guardian
ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals the termination of his parental rights to his child, born in 2008.  He contends (1) the record lacks clear and convincing evidence to support the grounds for termination cited by the juvenile court and (2) termination was not in the child's best interests.

I.    *Grounds for Termination*

The mother and father have a long history of methamphetamine use.  The department of human services learned of their drug use in 2014 and obtained an order removing the child from their care.  Over the two-year life of the case, the child was removed from parental custody three times.  The juvenile court eventually ordered the child returned to her parents' custody. The court granted the mother physical care and the father visitation.  The case was dismissed in late 2016.

The father relapsed in June 2017.  Later the same year, the mother had a stroke brought on by excessive drug use.  She was hospitalized and placed in a medically-induced coma.

The department intervened again.  The juvenile court ordered the child's removal and adjudicated the child a child in need of assistance.  The department placed her in foster care with the same couple who cared for her during the first proceeding.  She remained in their home throughout the proceedings.

Meanwhile, the father was arrested on a federal charge of conspiracy to distribute methamphetamine.  He was jailed at a county facility and remained in jail or prison throughout the child-in-need-of-assistance and termination proceedings—a total of twenty-one months.

The juvenile court terminated the father's parental rights pursuant to several statutory grounds.  We may affirm if we find clear and convincing evidence to support any of the grounds.  *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).  On our de novo review, we focus on Iowa Code section 232.116(1)(e) (2019).  That provision authorizes termination where

> [t]he court finds that all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. . . .

Iowa Code § 232.116(1)(e).  Under the provision, "significant and meaningful contact"

> includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.* § 232.116(1)(e)(3).

During the first year of his incarceration, the father had visits with the child "every couple months."  After approximately one year at the jail facility, staff limited the visits to "once every three months."  The father was subsequently transferred to the Leavenworth prison camp in Kansas, where he remained at the time of the termination hearing.  He testified to an expected release date of March 13, 2020. He acknowledged that after his release, he would "be going to a halfway house or

home confinement" and would be subject to "three years of supervised release." He also acknowledged the child would be unable to join him if he were placed in a halfway house.

The level of contact the father had with his child over the two years preceding the termination hearing was not "significant or meaningful." *See In re J.M.*, No. 17-2073, 2018 WL 1182544, at *4 (Iowa Ct. App. Mar. 7, 2018) ("The father had not seen his children since the commencement of his incarceration, but in the three months leading up to the termination hearing, he talked to the two older children almost once a week via phone. The parents' contact with the children in the six months leading up to the termination hearing can hardly be described as significant and meaningful."). We conclude the State proved that termination was warranted under Iowa Code section 232.116(1)(e).

## II.    *Best Interests*

The father contends termination was not in the child's best interests. He cites his "close bond" with the child. The father's argument actually implicates a statutory exception to termination. *See* Iowa Code § 232.116(3)(c) (stating the court need not terminate parental rights where "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). The exception is permissive, not mandatory. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). Given the father's long absence from the child's daily life, we agree with the juvenile court's decision not to invoke the exception.

We affirm the juvenile court's termination of the father's parental rights to the child.

**AFFIRMED.**